309 Ga. 805
FINAL COPY

S20A0942.  SUBAR v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Desean Martin Subar was convicted of various offenses, including malice murder, in connection with crimes he committed against Justin Bryant, Bettie Stoddart, and Gary Kimber.[1] Subar appeals, arguing that he was denied constitutionally

---

[1] On December 6, 2016, a DeKalb County grand jury indicted Subar for the malice murder of Bryant (Count 1); the felony murder of Bryant based on armed robbery, aggravated assault, home invasion, and possession of a firearm by a first offender probationer (Counts 2 through 5); the armed robbery of Bryant, Stoddart, and Kimber (Counts 6, 9 and 11); the aggravated assault of Bryant, Stoddart, and Kimber (Counts 7, 10 and 12); home invasion (Count 8); and two weapons charges (Counts 13 and 14).

Following a trial from April 23 to 26, 2018, the jury returned guilty verdicts on all charges.  Subar was sentenced on May 2, 2018, to life in prison without parole for the malice murder of Bryant plus 20 years for the armed robbery of Stoddart.  Subar received concurrent sentences for home invasion, the armed robberies of Bryant and Kimber, and for possessing a firearm as a first offender probationer, and a suspended sentence for possessing a firearm during the commission of a crime.  The remaining counts were either vacated by operation of law or were merged for sentencing purposes.

Subar filed a motion for new trial on May 7, 2018, which he amended through new counsel on November 15, 2019.  After a hearing, the trial court denied the motion as amended on December 19, 2019.  Subar timely filed a notice of appeal to this Court.  The appeal was docketed to the April 2020 term of this Court and was submitted for a decision on the briefs.

effective assistance of counsel and that the trial court erred by admitting improper character evidence pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)").  We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that, in January 2016, Bryant was living with his brother, Tevin, in a two-bedroom apartment in DeKalb County.  On the evening of January 28, 2016, the men invited some friends over for a party at their apartment.  When the party ended, everyone went home, except Stoddart and Kimber, who stayed for the night.

Early the next morning, Tevin's mother drove him to an appointment while Bryant, Kimber, and Stoddart slept.  A short time later, Kimber heard someone banging on the front door.  Before he could leave the bedroom where he and Stoddart had been sleeping, an armed man entered.  The man told Kimber and Stoddart, "don't move, put up your hands" and demanded to know "where the money at."  Kimber and Stoddart complied, but denied having any money.  While the armed man, who referred to himself

2

as "Killer Max," continued to demand the whereabouts of money and drugs in the apartment, a second armed man entered, escorting Bryant into the bedroom. The men eventually put the victims into the bedroom closet and then rummaged through the apartment; they took numerous electronic devices from the home, including all of the victims' cell phones.

When the apartment fell silent, Bryant exited the closet and left the bedroom where the victims were being held. Shortly thereafter, Kimber also exited the closet; he heard a scuffle and a gunshot, after which the armed men, who were still inside the residence, fled through the back door of the apartment. Kimber found Bryant lying on the floor of the other bedroom, bleeding from a gunshot wound.

Kimber ran to a neighbor's house to call 911. When officers arrived, they found Bryant, still conscious, on the floor. He was in pain and could only communicate in short bursts. Officers noted that both the front and back doors suffered damage consistent with forced entry. The apartment was in disarray, a television had been

ripped from the wall, and a single shell casing was located in the bedroom where Bryant had been shot. Bryant repeated the phrase "Killer Max" to officers until he was taken by EMS to a hospital, where he later died.

The medical examiner recovered a bullet from Bryant's body and determined that Bryant died as a result of a gunshot wound to the abdomen. The State's firearm examiner determined that the bullet recovered during the autopsy matched the shell casing found at the scene, and opined that both had been fired from a Glock .40 pistol.

Kimber and Stoddart provided descriptions of the two gunmen to police. They noted that one of the gunmen was taller, wore a pair of black jeans ripped at the knee, and had an accent "from the islands." After officers left the apartment, Kimber and Stoddart located a cell phone that they did not recognize on the floor of the bedroom where Bryant had been shot. They turned it over to officers, and a search of the phone revealed that Subar was listed as the owner. Officers also located a photograph of Subar taken the

4

day before the crimes showing him in a pair of black jeans ripped at the knee. Kimber and Stoddart later identified Subar as one of the armed men that had broken into the apartment, after which a warrant was issued for Subar's arrest. Subar was eventually located in a house in DeKalb County; he engaged in a three-hour standoff with the police before his arrest.

At trial, the State presented evidence that Subar was not acquainted with Tevin, Kimber, Stoddart, or Bryant. The State also introduced a recorded jail call during which Subar referred to himself as "Max," and introduced Subar's birth certificate into evidence, which showed that he was born in Trinidad and Tobago. Finally, the State introduced a certified copy of Subar's 2012 first offender burglary adjudication by guilty plea and his sentence to establish that he was a first offender probationer at the time of the crimes.[2] The State also introduced witness testimony and documentary evidence concerning the 2012 burglary for the

---

[2] Subar does not challenge the admission of his 2012 first offender burglary adjudication and sentence for the purpose of establishing that he was a first offender probationer at the time of the crimes in the current case.

purposes of showing motive and intent pursuant to OCGA § 24-4-404 (b).

Though not enumerated as error, consistent with our customary practice in murder cases,[3] we have reviewed the sufficiency of the evidence, and we conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Subar was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Subar claims that he received constitutionally ineffective assistance of counsel because his trial counsel failed to file a general demurrer or a motion in arrest of judgment to challenge the home invasion charge (Count 8) of the indictment. In order to establish that he received ineffective assistance of counsel, Subar must prove both deficient performance and prejudice. See *Strickland v.*

---

[3] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___, ___ (4) (b) (846 SE2d 83) (2020). The Court began assigning cases to the December Term on August 3, 2020.

6

*Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Subar claims that his trial counsel should have filed either a general demurrer or a motion in arrest of judgment[4] to the count of the indictment that charged him with home invasion because, he alleges, the indictment failed to specify that Subar intended to commit the underlying crimes "therein," or inside the residence. See OCGA § 16-7-5 (b).[5] But the indictment alleged that Subar "did

---

[4] As this Court has previously explained, "[a] general demurrer challenges the sufficiency of the substance of the indictment." (Citation, punctuation and emphasis omitted.) *Kimbrough v. State*, 300 Ga. 878, 880 (2) (799 SE2d 229) (2017). And a motion in arrest of judgment challenges "a defect that the accused might otherwise have challenged by a timely general demurrer. It will lie only when the indictment is void." (Citation omitted.) *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003).

[5] OCGA § 16-7-5 (b) states as follows:

> A person commits the offense of home invasion in the first degree when, without authority and with intent to commit a forcible felony *therein* and while in possession of a deadly weapon or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury, he or she

without authority and with intent to commit armed robbery and aggravated assault, forcible felonies, . . . enter the dwelling house of Justin Alexander Bryant, . . . while such dwelling house was occupied by Justin Bryant, a person with authority to be present therein." The allegation that Subar entered Bryant's home without authority and with the intent to commit various felonies necessarily implied that Subar intended to commit the underlying crimes inside the residence. See *Jordan v. State*, 307 Ga. 450 (836 SE2d 86) (2019).

> As a result, this count of the indictment was sufficient to place [Subar] on notice of the crime with which he was charged, and a general demurrer would not have been successful. See *Budhani v. State*, 306 Ga. 315, 320 (1) (b) (830 SE2d 195) (2019) ("[I]ndictment withstands a general demurrer and satisfies due process here because it alleges the essential elements of the offenses . . . and put [the defendant] on notice of the crimes with which he is charged and against which he must defend." (Citation and punctuation omitted)).

*Jordan*, 307 Ga. at 455 (3). Because neither a general demurrer nor

---

enters the dwelling house of another while such dwelling house is occupied by any person with authority to be present therein. (Emphasis supplied.)

8

a motion in arrest of judgment would have been successful, Subar cannot show deficient performance, as "counsel cannot be ineffective for failing to make a meritless motion." *Fleming v. State*, 306 Ga. 240, 250 (5) (b) (830 SE2d 129) (2019).

3. Subar contends that the trial court erred by admitting evidence of the 2012 burglary at trial pursuant to OCGA § 24-4-404 (b). We see no reversible error.

The record shows that Subar committed a prior burglary wherein he and two others kicked in the door of a house while the homeowner was present and stole two televisions, a PlayStation, and an Xbox. Subar pled guilty to burglary in 2012 and was sentenced as a first offender. Prior to trial in this case, the State filed a notice of intent to introduce this evidence pursuant to OCGA § 24-4-404 (b). After a hearing, the trial court admitted the prior burglary as Rule 404 (b) evidence for the purposes of showing Subar's motive and intent to commit the crimes charged.

Assuming without deciding that the admission of this evidence was erroneous, any error was harmless. The evidence of Subar's

9

guilt was strong. He was identified by two eyewitnesses and, despite the record showing he had no connections to any of the victims, Subar's cell phone was found in the bedroom where Bryant was shot. The cell phone included a recent photograph of Subar wearing clothing matching the description of the clothing worn by one of the assailants. And Subar made a pre-trial phone call from jail wherein he referred to himself as "Max." See *Hood v. State*, 299 Ga. 95, 105-106 (4) (786 SE2d 648) (2016) (admission of Rule 404 (b) evidence harmless where evidence of guilt was strong). Moreover, the jury was aware of the prior burglary as the State introduced a certified copy of Subar's status as a first offender probationer in order to establish certain charges within the indictment. Based on the foregoing, it is highly probable that the introduction of the prior burglary did not contribute to the jury's verdict. Id. at 106 (4).

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Murder. DeKalb Superior Court. Before Judge Jackson.

*Gerard B. Kleinrock*, for appellant.

*Sherry Boston, District Attorney, Emily K. Richardson, Lenny I. Krick, Shannon E. Hodder, Alana J. Driscoll, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.